**Ross P. Meyer (028473)**
Ross@EnaraLaw.com
**Enara Law PLLC**
7631 East Greenway Road, Suite B-2
Scottsdale, Arizona 85260
Telephone: (602) 687-2010
Filings@EnaraLaw.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Haute Plank, Inc., an Arizona corporation, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **(Jury Trial Demanded)** |
| Grato, S.L., LLC, a Spanish corporation, | |
| Defendant. | |

## INTRODUCTION

1.    Haute Plank, Inc. ("Plaintiff") brings this Complaint arising from the negligent and fraudulent actions leading to the Contract entered into between the parties, along with the continued breaches of the Contract by Grato, S.L., LLC ("Grato"), and the continued moving of the goalposts and changing of terms, which are causing substantial harm to Plaintiff and Plaintiff's customers.

## PARTIES

2.    Plaintiff is an Arizona corporation, with its principal place of business in Scottsdale, Arizona in Maricopa County. Plaintiff is a company that sells luxury flooring using only the best materials, a marine birch core, X-ray inspection, and the exclusive HP Titanium finish.

3.    Defendant Grato, S.L., LLC ("Grato") is Plaintiff's exclusive supplier of hardwood, and is based in Cantabria, Spain, and its actions, including doing business, in

1

Maricopa County, Arizona have given rise to this Complaint. Grato is a foreign corporation as defined under A.R.S. § 10-140(25) ("a corporation for profit that is incorporated under a law other than the law of this state."), and has been registered with the Arizona Corporation Commission as of February 14, 2025.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1332 as Plaintiff's claims arise under the law of the United States of America.

5. Without limiting the generality of the foregoing, the Defendant either directly, or through agents who were at the time acting with actual or apparent authority and within the scope of such authority, has:

   a. Transacted business in Arizona;

   b. Availed themself intentionally of the benefits of doing business in Arizona;

   c. Caused tortious damage by acts and/or omissions in Arizona;

   d. Caused tortious damage in Arizona by acts or omissions committed outside such jurisdiction while (i) regularly doing business or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction;

   e. Committed acts and omissions which Defendant knew or should have known would cause damage (and, in fact, did cause damage) in Arizona to Plaintiff while (i) regularly doing or soliciting business in such jurisdiction, and/or (ii) engaging in other persistent courses of conduct within such jurisdiction;

2

f.   Otherwise had the requisite minimum contacts with the state of Arizona such that it is fair and reasonable to require Defendant to come to Court to defend this action.

6.    Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

**FACTUAL ALLEGATIONS**

7.    Grato is a supplier of luxury wood flooring company.

8.    Grato's website explains that in 2012 they "bet on wood flooring as the basis of our business project, consolidating our position in the market whilst building a reputation based on product and service." *See* Grato's Website (*available at* www.grato.es/en/about-us) (last accessed October 23, 2025).

9.    Grato's website goes on to explain they are "Selfless by vocation," and explaining "We give ourselves with passion and gratitude." *Id*.

10.    The website also states, "We demonstrate true loyalty," and explains "You are part of our family." *Id*.

11.    Grato is a foreign corporation, as defined under A.R.S. § 10-140(25), that is not permitted to "transact business in this state until it is granted authority to transact business in this state as provided in this chapter from the commission." A.R.S. § 10-1501(A).

12.    Grato registered as a foreign corporation with the Arizona Corporation Commission or received authority to transact business in this State on or around February 14, 2025.

13.    Plaintiff and Grato began their business relationship in November 2023. For approximately a year and a half, Plaintiff placed numerous orders for its clients throughout

the United States, and in Arizona, all of which were custom, non-refundable, and made under the Grato confirmation process.

14. In or around December 2024, Plaintiff placed orders for flooring to be delivered to Plaintiff in Scottsdale, Arizona. The orders included the cost of shipping the materials by sea. *See Exhibit "A" – PO 1791.*

15. The process for securing orders from Grato included Plaintiff's customer selecting the product to order and then a Purchase Order being signed by Plaintiff and Grato (the "Order Process").

16. Grato completed the Order Process for Purchase Order 1761 on October 17, 2024, which was confirmed on October 28, 2024. Plaintiff has paid all amounts due related to Purchase Order 1761, but Grato has failed to ship the order. The Order included the cost of shipping the materials by sea. *See Exhibit "B" – Haute Plank's PO 1761*

17. Grato completed the Order Process for Purchase Order No. 1791 on December 3, 2024, which was confirmed on December 5, 2024, and Plaintiff was to pay Grato $54,486.10. The order included the cost of shipping the materials by sea. *See Exhibit "C" – Haute Plank's PO 1791.*

18. Grato completed the Order Process for Purchase Order No. 1810 on January 16, 2025, which was confirmed on March 24, 2025, and Plaintiff was to pay Grato $34,875.00. The order included the cost of shipping the materials by sea. *See Exhibit "D" – Haute Plank's PO 1810.*

19. Grato completed the Order Process for Purchase Order No. 1734B on March 19, 2025, which was confirmed on March 26, 2025, and Plaintiff was to pay Grato $231.11. *See Exhibit "E" – Haute Plank's PO 1734B.*

20. Grato completed the Order Process for Purchase Order No. 1829 on March 19, 2025, which was confirmed on March 26, 2025, and Plaintiff was to pay Grato

4

$8,093.60. The order included the cost of shipping the materials by sea. *See Exhibit "F"- Haute Plank's PO 1829.*

21.    Grato completed the Order Process for Purchase Order No. 1830 on March 7, 2025, which was confirmed on March 26, 2025, and Plaintiff was to pay Grato $38,662.30.   The order included the cost of shipping the materials by sea. *See Exhibit "G' – Haute Plank's PO 1830.*

22.    Grato completed the Order Process for Purchase Order No. 1831 on March 7, 2025, which was confirmed on March 26, 2025, and Plaintiff was to pay Grato $36,900.00. Plaintiff paid Grato $18,450,00 and paid the air freight cost that far exceeded cost to ship the materials by sea. *See Exhibit "H" – Haute Plank's PO 1831.*

23.    Grato completed the Order Process for Purchase Order No. 1827 on April 21, 2025, which was confirmed on July 24, 2025, and Plaintiff was to pay Grato $21,320.00 The order included the cost of shipping the materials by sea. *See Exhibit "I" – Haute Plank's PO 1827.*

24.    Grato completed the Order Process for Purchase Order No. 1838 on May 20, 2025, which was confirmed on July 24, 2025, and Plaintiff was to pay Grato $8,175.00. This order included the shipping costs. The order included the cost of shipping the materials by sea. *See Exhibit "J" – Haute Plank's PO 1838.*

25.    Grato completed the Order Process for Purchase Order No. 1845 on May 20, 2025, which was confirmed on July 24, 2025, and Plaintiff was to pay Grato $43,884.00. This order included the shipping costs.  The order included the cost of shipping the materials by sea. *See Exhibit "K" – Haute Plank's PO 1845.*

26.    Grato completed the Order Process for Purchase Order 1843 on May 20, 2025, which was confirmed on July 24, 2025, and Plaintiff was to pay $31,875.00. This

5

order included the shipping costs.  The order included the cost of shipping the materials by sea.  *See Exhibit "L" – Haute Plank's PO 1843.*

27.     Grato completed the Order Process for Purchase Order 1849 on May 20, 2025, which was confirmed on July 24, 2025, and Plaintiff was to pay $32,775.00.  The order included the cost of shipping the materials by sea.  *See Exhibit "M" – Haute Plank's PO 1849.*

28.     Grato completed the Order Process for Purchase Order 1809 on May 20, 2025, which was confirmed on July 24, 2025, and Plaintiff was to pay $68,600.00. The order included the cost of shipping the materials by sea.  *See Exhibit "N" – Haute Plank's PO 1809.*

29.     Purchase Order Nos. 1761, 1791, 1810, 1734B, 1739, 1828, 1830, 1831, 1827, 1838, 1845, 1843, 1849, and 1809, are herein referred to as the "Pre August 7, 2025, Orders." The orders included the cost of shipping the materials by sea.

30.     Plaintiffs asserts that there are additional orders included in the Pre August 7, 2025 Orders, but the orders identified *supra* are representative of the other orders at issue.

31.     In or around May 2025, Grato stopped shipping Plaintiff the orders and alleged Plaintiff had failed to pay the amounts due and owing.

32.     In or around January 2025, Grato claimed that Plaintiff owed it approximately $850,000.00. To provide assurances to Grato, Plaintiff sent Grato a copy of its business plan.  *See attached as Exhibit "O" – Haute Plank's Business Plan.*

33.     Approximately a month later, Grato's principal Francisco Garcia communicated with one of Plaintiff's principals stating "just one thing, you keep thinking of this as your business, but this is NOT your business anymore, when you have someone who you owe a lot of money . . . please contact Jose and he will try to reach an agreement

6

of the past and future, but both things (sic) will be done at the same time." *See Exhibit "P" – Text messages between Grato and Haute Plank.*

34. In April 2025, Grato sent Plaintiff a personal guaranty for its principals to sign, a credit and security agreement for Plaintiff to execute, a revolving promissory note, and a separate promissory note. *See Exhibit "Q" – Proposed Guaranty and Promissory Note from Grato to Haute Plank.*

35. Plaintiff, and its principals, rejected each of these agreements.

36. On July 22, 2025, Plaintiff executed a merchant advance, which required repayment of $219,000.00. *See Exhibit "R" – Merchant Advance from Fundify to Haute Plank.*

37. Plaintiff entered into this agreement because Grato and Plaintiff had not reached an agreement for the past and future, as stated by Grato in February 2025, and Plaintiff needed funding in order to operate its business.

38. On August 7, 2025, the parties entered the agreement that resolved both past and future orders (the "Agreement"). *A true and correct copy of the Agreement is attached as attached as Exhibit "S."*

39. The Agreement states that "Haute Plank, Inc. acknowledges a commercial debt to Grato, S.L., LLC., in the amount of $1,208,938.30 USD relating to previously delivered hardwood flooring materials and <u>materials currently ordered and awaiting payment before shipping</u>. This debt is acknowledged as a commercial materials obligation and shall not be considered or construed as a loan." *See Exhibit "S" (emphasis added, other emphasis in original removed).*

40. The Agreement further explained Plaintiff's ongoing business activities as, "Creditor acknowledges Debtor will continue normal operations and may seek investment or financing, provided such activities do not materially impair Debtor's ability to meet the

payment schedule. Additionally, while amounts remain due and owing under this payment plan Agreement, Debtor covenants and agrees:

a. Debtor will make no fixed asset purchases (vehicles, etc.) exceeding $25,000.00 without the prior written consent of Creditor; provided that approved purchases shall not, in any event, exceed $40,000.00 in any quarter or $150,000.00 annually; and provided further that such purchase limits may not be aggregated year to year (i.e. unused amounts in one year do not roll over into the next year).

b. Debtor will not make distributions to shareholders or bonus payments to Jennifer or Sam.

c. Debtor will provide to Creditor, within 20 days following the end of each applicable quarter, internally prepared, quarterly financial statements (income statement, balance sheet, cash flow), certified as accurate and complete by the CEO of Debtor starting with the quarter ending September 30, 2025. Debtor will also provide semi-annual financial statements (as of June 30 and December 31), within 45 days after the effective date, prepared by a CPA starting with the quarter ending December 31, 2025[.]

d. For new orders placed on and after the date of this Agreement, Debtor will pay a deposit to Creditor in the amount of fifty percent (50%) of the order (including shipping) and will pay the balance prior to Creditor shipping the applicable order.

e. Creditor will be priority supplier of materials and inventory for Debtor's sales, and Debtor's agents and employees will use best efforts to promote and sell Creditor's products when proposing materials to customers,

> including but not limited to featuring Grato products prominently in
> Debtor's showroom."

*See* Exhibit N, at § 6(a)-(e).

41.     The Agreement contained an incorporation clause, which stated, "[t]his document contains the full understanding between the parties. Any changes must be in writing and signed by both parties." *See* Exhibit S, at § 7.

42.     The Agreement indicated that the laws of Arizona govern and is the choice of law over any disputes. *Id*.

43.     After executing the Agreement, Plaintiff placed orders with Grato consistent with the terms and paid fifty (50%) percent of the order (including shipping) when the orders were placed.

44.     Plaintiff sought to have the Pre August 7, 2025 Orders shipped to Scottsdale, Arizona, and subsequently paid according to the terms of the Agreement, but Grato refused.

45.     On September 5 through 8, 2025, one of Plaintiff's principals and Grato's principals communicated, in which Grato stated, "All the order mark[ed] in red are ready to ship and they are all under the payment agreement and the new orders need to be done with deposit and (sic) balance before arriving to the USA." Plaintiff responded stating, "Shouldn't this include all the orders that have been confirmed prior to the agreement being signed? Some of those, actually most of them are 7 to 9 months old at this point. I understand the new ones that have not been confirmed not being included. Does this make sense?" *See Exhibit "T" – Screenshot of Electronic Communications between Grato and Haute Plank from on or about September 5, 2025 through September 8, 2025.*

46.     Grato stated, "We will have all the orders with deposit in the agreement and the ones we have here in the total [am]ount that was done with [t]he numbers, all the new

orders will have to be done with the new agreement. We are not going to do new orders and get paid 18 month later." *Id*.

47.    Plaintiff responded, "This is not for new orders. These are orders that are 7-9 months old." Grato then states, "I agree that those orders are old, but we never receive[d] the deposits, and we have orders with invoices that we have not sen[t] that could be sen[t] and are in the agreement. *Id*.

48.    Plaintiff responded, "Correct as the agreem[e]nt was still in negotiations. The question is about the orders that were placed and confirmed before the agreement was finalized. The 'new' orders would include PO's 1844, 1851, 1853, 1854, 1859 and everything else moving forward." *Id.*

49.    Plaintiff hired counsel who contacted Grato's Arizona based counsel, seeking to resolve this dispute, but again Grato refused.

50.    After refusing to deliver the Pre August 7, 2025, Orders to Plaintiff, Plaintiff's business has suffered substantially.

51.    Plaintiff then hired undersigned counsel who attempted to negotiate with Defendant's counsel, located in Arizona, but no offers were made that would effect the shipment of the Pre August 7, 2025 Orders, in a manner that would satisfy Plaintiff's customers, as was expected and agreed based upon the Agreement.

**COUNT ONE**
**BREACH OF CONTRACT**
**(Against Grato)**

52.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

53.    Under Arizona law, "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *See Thomas v. Montelucia Villas LLC*, 232 Ariz. 92, 96, ¶ 16 (Ariz. 2013).

10

54.     Plaintiff and Grato entered into the Agreement with an effective date of August 7, 2025.

55.     After entering the Agreement, Plaintiff has fully performed its obligations to date and intends to fully perform its remaining obligations throughout the Agreement.

56.     Grato breached the Agreement by failing to deliver the Pre August 7, 2025, Orders to Plaintiff in Scottsdale, Arizona.

57.     Grato's breach of the Agreement has damaged Plaintiff in an amount to be determined at trial.

58.     After execution, Grato's breaches of the Agreement caused Plaintiff to suffer damages, including damages that are directly related to the expectation that the Pre August 7, 2025, Orders would be shipped, fulfilled.  Plaintiff relied on Grato's performance and because of their breaches of contract, an amount proven at trial will be not less than $400,000.00.  Plaintiff has suffered losses due to customer cancellations, chargebacks, unnecessary and extraordinary air freight charges due to forced alternative arrangements to ensure that the materials were shipped to the United States, and reputational, operational losses that are yet to be quantified and other damages that are occurring and other damages that will be supplemented and or amended.  *See Exhibit "U" – Demand Letters; See Exhibit "V" Screenshot of Tariffs from Grato.*

59.     Plaintiff reserves the right to amend this Complaint, including to add claims for damages for any legal reason, and any allegation.

60.     As this action arises out of contract, Plaintiff is entitled to recover its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and costs pursuant to A.R.S. § 12-341.

### COUNT TWO
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against Grato)

61.   Plaintiff hereby alleges and incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

62.   The law implies a covenant of good faith and fair dealing in every contract. *See Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 383 (Ariz. 1985); *see also* Restatement (Second) of Contracts § 205 (1981); *see also* Walter H.E. Jaeger, 5 Williston on Contracts § 670 at 159 (3d ed.1961).

63.   The duty arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship. *See Wagenseller*, 147 Ariz. at 383.

64.   Plaintiff and Grato entered into the Agreement with an effective date of August 7, 2025.

65.   After entering the Agreement, Plaintiff has fully performed its obligations to date and intends to fully perform its remaining obligations throughout the Agreement.

66.   Grato breached the Agreement by failing to deliver the Pre August 7, 2025, Orders to Plaintiff in Scottsdale, Arizona.

67.   The parties' intention to deliver the Pre August 7, 2025, Orders was the purpose of the Agreement.

68.   Grato's breach of the Agreement has damaged Plaintiff in an amount to be determined at trial.

69.   Plaintiff is entitled to recover damages due Grato causing Plaintiff to suffer damages in amount to be proven at trial.

70.    As this action arises out of contract, Plaintiff is entitled to recover its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 and costs pursuant to A.R.S. § 12-341.

## COUNT THREE
## FRAUD IN THE INDUCEMENT
### (Against Grato)

71.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

72.    Fraud in the inducement requires: (1) a fraudulent misrepresentation of material fact; (2) that the party making the representation knew it was false; (3) that the party to whom the representation was made did not know of the falsity; (4) that the representation was made with the intent it would be acted upon; and (5) that the representation cause damages. *See Dillon v. Zeneca Corp.*, 202 Ariz. 167, 172, ¶ 13 (Ariz. App. 2002).

73.    Grato falsely represented to Plaintiff that they would work "to reach an agreement of the past and future, but both thinkgs (sic) will be done at the same time."

74.    The Parties' negotiations complied with this framework and resulted in the Agreement stating the amount of the payment related "to previously delivered hardwood flooring materials and materials currently ordered and awaiting payment before shipping." Exhibit N, at § 1 (emphasis added).

75.    Plaintiff reasonably relied on the representations of Grato by agreeing to the Agreement and had no reason to suspect that Grato would demand further monies for delivery of Pre August 7, 2025, Orders.

76.    Plaintiff reasonably relied on the representations of Grato by placing additional orders and complying with the terms for orders placed after August 7, 2025,

including making a fifty (50%) percent deposit when the order was placed and paying the remaining fifty (50%) percent when the order was shipped.

77.    Grato falsely represented that it would accept payment for the Pre August 7, 2025, Orders through the installment payments, and instead has demanded full payment before *any* shipment is made related to the Pre August 7, 2025, Orders.

78.    Grato knew the representation it made to Plaintiff was false or should have known it was false, as Grato had continued to tell Plaintiff that it would take over Plaintiff's business if Plaintiff did not agree to its terms. Instead, it turned out that was Grato's plan all along.

79.    Plaintiff was and continues to be severely damaged by Grato's misrepresentations in an amount to be determined at trial.

80.    Due to Defendant's fraudulent conduct, which was aggravated and outrageous and undertaken with an evil mind, Defendant intended to injure Plaintiff and pursued a course of conduct knowing it created a substantial risk of significant harm to Plaintiff. Plaintiff therefore seeks punitive damages in an amount to be proven at trial

## COUNT FOUR
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Grato)

81.    Plaintiff hereby realleges and reincorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

82.    The elements of Tortious Interference of Contract include: (1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Antwerp*

14

*Diamond Exchange v. Better Business Bureau of Maricopa County, Inc.*, 130 Ariz. 523, 530, 637 P.2d 733, 730 (Ariz. 1981).

83.    Plaintiff has entered into contracts with its customers to deliver the hardwood it has ordered from Grato.

84.    Grato has been aware of these contracts Plaintiff has with its customers.

85.    Grato took its actions of misrepresentation, fraud, breach of contract, and breach of the covenant of good faith and fair dealing, by failing to deliver the Pre August 7, 2025, Orders to Plaintiff, to cause substantial harm to Plaintiff's customers and Plaintiff's relationships with these customers.

86.    Since Grato has taken these actions, Plaintiff's customers have terminated orders, demanded refunds, have demanded additional monies for the delays, have threatened to sue Plaintiff, and have even contacted news outlets to further disparage Plaintiff.

87.    Plaintiff has been damaged and continues to be damaged in an amount to be determined at trial. Due to Defendant's tortious conduct, which was aggravated and outrageous and undertaken with an evil mind, Defendant intended to injure Plaintiff and pursued a course of conduct knowing it created a substantial risk of significant harm to Plaintiff. Plaintiff therefore seeks punitive damages in an amount to be proven at trial.

88.    Plaintiff reserves the right to Amend this Complaint for any legal reason and just cause.

15

**TRIAL BY JURY**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

WHEREFORE, Plaintiff prays for compensatory damages in an amount to be proven at trial;

A.    For consequential damages in an amount to be proven at trial;

B.    For any damages applicable by law;

C.    For pre-judgment and post-judgment interest on the foregoing sum at the highest rate permitted by law;

D.    For punitive damages in an amount sufficient to punish Grato for their wrongful conduct and to deter others from engaging in similar misconduct in the future;

E.    For costs incurred in bringing this action pursuant to A.R.S. § 12-341;

F.    For reasonable attorneys' fees pursuant to A.R.S. § 12-341.01 or where otherwise allowed by law; and

G.    For all other relief that this Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 26th day of November, 2025.

**ENARA LAW PLLC**

By: */s/ Ross P. Meyer*
Ross P. Meyer
*Attorney for Plaintiff*

16