IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Haute Plank Incorporated, | No. CV-25-04436-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Grato S.L. LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff's "Application for Entry of a Temporary Restraining Order Without Notice" ("Application for TRO") (doc 24).[1] Although Plaintiff filed their application *ex parte*, considering that Defendant has received a "courtesy notice," (doc. 24 at 2), and has filed a response, (doc. 26), the Court evaluates Plaintiff's Application for TRO as if notice was provided.

**I.    Background.**

On November 26, 2025, Plaintiff initiated this action by filing a four-count Complaint against Defendant. (Doc 1.) Plaintiff is an Arizona corporation that sells Spanish wood flooring directly to consumers. (*Id.* at 1.) Defendant is a manufacturer of Spanish hardwood flooring based in Cantabria, Spain, and has been supplying Plaintiff for approximately a year and a half. (*Id.* at 1, 3.) Plaintiff alleges that Defendant has failed to deliver several orders placed prior to August 7, 2025, in violation of the parties' August 7, 2025, Agreement ("Agreement"). (*Id.* at 11.)

---

[1]    Both parties have consented to Magistrate Judge jurisdiction. (Doc. 23.)

On December 12, 2025, Plaintiff filed a Motion for Preliminary Injunction. (Doc. 7.) In the Motion, Plaintiff requested injunctive relief in the form of requiring Defendant to ship all pre-August 7, 2025, orders for Spanish hardwood. (*Id.*)

On January 9, 2026, Plaintiff filed an Application for Entry of Default because Defendant had not answered or otherwise responded to its Complaint. (Doc. 15.) On January 12, 2026, the Clerk of Court entered default as to Defendant. (Doc. 16.)

On January 13, 2026, Defendant contemporaneously filed its Motion to Set Aside Default and its Answer to Plaintiff's Complaint. (Docs. 18, 20.)

On January 23, 2026, Plaintiff filed the instant Application for TRO. (Doc. 24.) Plaintiff filed the Application *ex parte*, requesting a mandatory injunction compelling Defendant to ship the Johnson Purchase Order 1791 ("Johnson Order") via air freight so that delivery may occur on or before January 31, 2026. (*Id.* at 1.) Plaintiff asserts that, if Johnson Order is not shipped on or before January 31, 2026, it will face irreparable harm, including "severe reputational damage, cascading customer attrition, and the very real prospect that the business will be unable to continue operating." (Doc. 24-1 at 1–2.) Plaintiff further states that it "seeks only to compel Grato to do what it already agreed to do, ship the Pre-August 7 Orders." (*Id.* at 9.)

The Court notes that Plaintiff did not provide a bond, arguing that "[n]o bond is required because Grato faces no cognizable harm from being ordered to perform its contractual obligations." (*Id.* at 10.) In the alternative, Plaintiff avers that, "if the Court requires security, it should be limited to the first $100,000 payment referenced in the parties' preliminary injunction and the Agreement. This $100,000 should not be paid until three (3) months after the shipment is made and Grato begins complying with the terms of the Agreement as indicated in A.R.S. § 47-2310(4)." (*Id.*)

Upon receipt of Plaintiff's Application, and noting that Defendant has received a "courtesy notice[,]" (doc. 24 at 2), this Court scheduled a telephonic hearing with the parties on January 26, 2026. (Doc. 25.) During that hearing, the parties discussed Plaintiff's Application and affirmed that the Johnson Order was a pre-August 7 order covered by the

parties' Agreement. *See* (doc. 28.) However, the parties disagreed whether shipment was warranted at this time. Plaintiff argued that while it did not pay the December 15, 2025, installment under the Agreement, their non-payment was warranted due to Defendant's refusal to ship pre-August 7 orders.[2] (*Id.*) Defendant argued that shipment has not occurred due to disputes over which party pays additional shipping costs[3] and Defendant's aversion to shipping more "free wood" due to Plaintiff's non-payment to date. (*Id.*)

This Court, upon review of the parties' submissions and oral arguments, attempted to strike a fine balance on the equities. Namely, Plaintiff would be obligated to pay 20% of the Johnson Order cost and pay for air freight shipping.[4] However, this holding did not resolve the TRO matter.

On January 27, 2026, the parties returned to the Court with the following four issues: (1) which party bears the burden of tariffs; (2) which party bears the burden of arranging shipping of the wood; (3) whether Plaintiff is obligated to pay the full Johnson Order price; and (4) which party shall arrange the pickup of the Johnson Order wood from Defendant's warehouse.

The Court scheduled and heard oral arguments on these issues on January 27, 2026. *See* (doc. 31.) During the hearing, the parties affirmed that the Agreement was silent on tariffs, and noted that each party paid tariffs at different points during the partes' course of dealings. (*Id.*) Second, the parties disputed whether full payment for the Johnson Order was required upon delivery—whereby the Johnson Order cost would be subtracted from the first $100,000.00 payment—or upon adjudication of the Plaintiff's Motion for Preliminary Injunction. (*Id.*) Third, the parties discussed whether Plaintiff bears the burden of both arranging pickup and air freight for the wood. (*Id.*)

//

//

---

[2] Plaintiff, in both its written and oral submissions, relies upon A.R.S. § 47-2310(4)—based on U.C.C. 2-310(d)—to support its argument that it may withhold payment until shipment occurs. *See* (docs. 24, 28.)
[3] The parties' Agreement is silent on this matter. *See* (doc. 26 at 12–16.)
[4] Plaintiff avers that expedited air freight could cost as much as $40,000.00 to $60,000.00 for a shipment of this size. (Doc. 28.)

- 3 -

**II.    Legal Standards**.

The standards for issuing a TRO and a preliminary injunction are "essentially the same[.]" *Beaty v. Brewer*, 791 F. Supp. 2d 678, 681 (D. Ariz. 2011). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, [(4)] and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "To grant preliminary injunctive relief, a court must find that 'a certain threshold showing is made on each factor.'" *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011)). "[A]lternative[ly,] a preliminary injunction is appropriate if 'serious questions going to the merits were raised and the balance of the hardships tips sharply' in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation." *Volga Dnepr UK Ltd. v. Boeing Co.*, 464 F. Supp. 3d 1238, 1242 (W.D. Wash. 2020) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)); *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) ("But if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.") (cleaned up).

"These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1396 n.1 (9th Cir. 1997). Regardless of the formulation, "[w]here the movant seeks a mandatory injunction, . . . injunctive relief is 'subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.'" *MG Pharm. LLC v. Cardinal Health 110 LLC*, No. CV-21-01747-PHX-SPL, 2021 WL 6845294, at *1 (D. Ariz. Oct. 15, 2021) (quoting *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993)).

- 4 -

Additionally, the moving Party must comply with Rule 65 in seeking a TRO. One such requirement is the necessity of security or bond. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). The Court has "wide discretion" in setting the amount of a bond for a TRO. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Included in the Court's wide discretion is the ability to set a zero-dollar bond "if there is no evidence the [defendant] will suffer damages from the injunction." *Id.*

**III.   Discussion**.

Considering that a TRO is "an extraordinary remedy never awarded as of right," *Winter*, 555 U.S. at 24, the Court shall scrutinize whether the TRO sliding scale tips in favor or opposes Plaintiff's requested injunctive relief.

   ***A.   Likelihood of Success on the Merits***.

The first issue is whether Plaintiff is likely to succeed on the merits in this action. In its Application for TRO, Plaintiff argues that it "is likely to succeed on the merits of the breach of contract claim, among others relating to the shipment of good[s] covered under the Agreement[.]" (Doc. 24-1 at 8.) Defendant refutes this statement, asserting that Plaintiff is unlikely to succeed on the merits as its "argument[s have] no basis in fact, law, or equity." (Doc. 26 at 9.)

The Court notes that Plaintiff has, in its Application for TRO, only asserted one of four claims in which its Complaint is based. Although Plaintiff has not plead its case in full in its Application, this omission does not inhibit entry of a TRO here. *See Koller v. Brown*, 224 F. Supp. 3d 871, 875 (N.D. Cal. 2016) ("To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to 'prove his case in full[.]'") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

Turning to Plaintiff's breach of contract claim, the Court is not convinced, at this early stage, that it is likely to succeed on the merits. To state a claim for a breach of contract,

Plaintiff must establish that "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021). Plaintiff's pleadings appear to establish a valid contract existed between the parties regarding the August 7, 2025, Agreement. (Doc. 1-1 at 139–43.) Plaintiff has also presented evidence that it has incurred damages that appear facially related to the August 7, 2025, Agreement. (*Id.* at 150–59.) However, to date, Plaintiff has not sufficiently established that Defendant has breached the parties' contract, and *ergo*, has not evinced that Defendant's breach has resulted in damages for Plaintiff.

Although Plaintiff has not established a sufficient likelihood of success on the merits of its breach of contract claim, it has presented a serious question of whether Defendant's refusal to ship the goods between August 7, 2025, to December 15, 2025, violates the parties' Agreement. Based on this finding, the Court will proceed to the remaining *Winter* elements.

### B. Irreparable Harm.

The next issue is whether Plaintiff is likely to suffer irreparable harm absent the granting of injunctive relief. Plaintiff contends that it faces loss of key clients, goodwill, heightened risk of being sued by customers, and risks to its "ability to continue operating." (Doc. 24-1 at 8.) Defendant responds that Plaintiff cannot establish irreparable harm because, under caselaw, injuries that may be remedied by damages are not considered "irreparable." (Doc. 26 at 6–7.)

"It is true that economic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award." *Rent-A-Ctr., Inc. v. Canyon TV & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Nevertheless, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). Further, "the threat of being driven out of business is sufficient to establish irreparable harm." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180,

1188 (9th Cir. 2022) (cleaned up).

Here, Plaintiff has averred, in addition to economic harm, that it is likely to suffer loss of goodwill, loss of customers, and a risk to its continued operations. Therefore, Plaintiff has sufficiently demonstrated a likelihood of irreparable harm.

### C. *Balance of Equities*.

The third issue is whether the balance of equities tips in favor of Plaintiff or Defendant. The Court notes that, due to its application of the 'serious question' standard, the balance of equities must tip sharply in favor of Plaintiff. *See Volga Dnepr UK Ltd.*, 464 F. Supp. 3d at 1242.

Plaintiff asserts that "[t]he equities overwhelmingly favor" itself. (Doc. 24-1 at 9.) Plaintiff supports this statement by alleging that this TRO only covers an order Defendant was required to ship under the Agreement. (Id.) Plaintiff further asserts that, if injunctive relief is not granted here, it will face "catastrophic harm[.]" (*Id.*)

Defendant retorts that it has already "supplied Haute with $1,143,438.58 of product without payment[,]" and that if a TRO was granted in Plaintiff's favor, it would be required to provide Plaintiff another $51,800.00 in free wood. (Doc. 26 at 8.) Because of this, Defendant contends that it would be the party unduly prejudiced, tipping the balance of equities in its favor. (*Id.* at 8–9.)

The Court finds that the balance of equities sufficiently tips in favor of Plaintiff under the serious question standard for the Johnson Order.[5] Because of the great risk of harm, including possible extinction of Plaintiff's business, the Court finds that Plaintiff's prospective injury overcomes Defendant's burden of shipping more wood. However, the balance of equities *does not* favor requiring Defendant to ship the wood *gratis*.

### D. *Public Interest*.

The last issue is whether the grant of an injunction is in the public interest. The Plaintiff bears the initial burden of establishing that an injunction is in the public interest.

---

[5] The Court notes that this finding solely concerns the Johnson Order and is not a reflection of the Court's view of equities that could tip in favor of Defendant regarding post-August 7, 2025, Agreement orders.

*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). The court need not consider "highly speculative" public consequences. *Id.*

Although the public has an aversion to requiring a business to ship goods without confirmation that full payment will be received, the public interest is not advanced by requiring the shuddering of businesses. Consequently, the Court finds that public interest supports maintaining the *status quo* for the parties, which is advanced by the issuance of a TRO.

**IV. Conclusion**.

For the foregoing reasons, the Court finds that the Winter factors modestly weigh in favor of granting a TRO regarding the Johnson Order in favor of Plaintiff. However, the Court will not require Defendant to bear the whole fiscal burden here. Instead, the Court will require Plaintiff to: (1) pay Defendant 20% of the Johnson Order value; (2) coordinate shipment via airfreight; and (3) pay the cost of tariffs related to the Johnson Order.

//

///

//

///

//

///

//

///

//

///

//

///

//

///

//

Accordingly,

**IT IS ORDERED** that Plaintiff's Application for Entry of a Temporary Restraining Order Without Notice (doc 24) is **GRANTED WITH MODIFICATIONS**.

**IT IS FURTHER ORDERED** that a Temporary Restraining Order is entered requiring Plaintiff to make payment, in the amount of $10,897.22, which represents twenty (20%) percent of the Johnson Order (Doc. 24-2 at 6) total ($51,800.00), to Defendant.

**IT IS FURTHER ORDERED** that, upon acknowledgment of payment by Plaintiff to Defendant, Plaintiff shall coordinate for air freight to transport the Johnson Order from Grato S.L., LLC to Haute Plank in Scottsdale, Arizona.

**IT IS FURTHER ORDERED** that Plaintiff shall pay the cost of air freight shipment of and tariffs related to the Johnson Order. Such payments shall not go to Defendant.

**IT IS FURTHER ORDERED** that Defendant shall make the Johnson Order available for pickup by the air freight transport selected by Plaintiff at its warehouse during normal business hours.

Dated this 28th day of January, 2026.

Honorable John Z. Boyle
United States Magistrate Judge