**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Haute Plank Incorporated, | No. CV-25-04436-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Grato S.L. LLC, | |
| Defendant. | |

Pending before the Court is Plaintiff's "Motion for Entry of a Preliminary Injunction."[1] (Doc. 7.) In its Motion, Plaintiff seeks injunctive relief in the form of a court order compelling Defendant to ship all pre-August 7, 2025, orders of wood planks it placed. (Doc. 7-1 at 17–18.) Defendant opposes Plaintiff's Motion, and characterizes it as an attempt by Plaintiff to receive "$306,000 more interest free credit[.]" (Doc. 38 at 4.) Because Plaintiff fails to satisfy its burden under the *Winter* four-factor test, the Court will deny the Motion.

## I.   SUMMARY.

Through August 2025, Defendant shipped $1.143 million in wood products to Plaintiff but was not paid. As a consequence, the parties entered into the "August 7," 2025 contract where Defendants would ship additional wood products to Plaintiff worth approximately $65,000, for a total of $1.208 million. In exchange, Plaintiffs would pay $1.208 million to Defendants in an agreed installment plan. Any orders placed after the

---

[1]   Both parties have consented to Magistrate Judge jurisdiction. (Doc. 23.)

August 7 contract would require a 50% downpayment along with other requirements.

Plaintiff now argues the contract requires Defendant to ship an additional $306,000 in wood products because those orders were placed prior to the August 7 agreement. Defendant argues those orders were not a part of the August 7 agreement. The Court agrees with Defendant. The $1.208 million dollar installment plan matches *down to the penny* the orders placed and agreed to by Plaintiff, and orders outside the $1.208 million installment plan were post-August 7 orders. To find otherwise would violate the intent of the contract. Plaintiff's argument would also require Defendant to ship $306,000 in product as a pre-August 7 requirement, but without any requirement for payment. The Court will not enter an injunction that furthers this absurd result.

## II.    PROCEDURAL BACKGROUND.

On November 26, 2025, Plaintiff initiated this action by filing a four-count Complaint against Defendant. (Doc 1.) Plaintiff is an Arizona corporation that sells Spanish wood flooring directly to consumers. (*Id.* at 1.) Defendant is a manufacturer of Spanish hardwood flooring based in Cantabria, Spain, and has been supplying Plaintiff for approximately a year and a half. (*Id.* at 1, 3.) Plaintiff alleges that Defendant has failed to deliver several orders placed prior to August 7, 2025, in violation of the parties' August 7, 2025, Agreement ("Agreement"). (*Id.* at 11.)

On December 12, 2025, Plaintiff filed the instant Motion for Entry of a Preliminary Injunction. (Doc. 7.)

On January 9, 2026, Plaintiff filed an Application for Entry of Default because Defendant had not answered or otherwise responded to its Complaint. (Doc. 15.) On January 12, 2026, the Clerk of Court entered default as to Defendant. (Doc. 16.)

On January 13, 2026, Defendant contemporaneously filed a Motion to Set Aside Default and an Answer to Plaintiff's Complaint. (Docs. 18, 20.)

On January 23, 2026, Plaintiff filed an Application for Temporary Restraining Order ("TRO"). (Doc. 24.) Plaintiff filed the Application *ex parte*, requesting an injunction compelling Defendant to ship the Johnson Purchase Order 1791 ("Johnson Order") via air

freight so that delivery may occur on or before January 31, 2026. (*Id.* at 1.)

Upon receipt of Plaintiff's Application, and noting that Defendant has received a "courtesy notice[,]" (doc. 24 at 2), this Court scheduled a telephonic hearing with the parties on January 26, 2026. (Doc. 25.) During that hearing, the parties discussed Plaintiff's Application and affirmed that the Johnson Order was a pre-August 7 order covered by the parties' Agreement. *See* (doc. 28.)

This Court, upon review of the parties' submissions and oral arguments, attempted to strike a fine balance on the equities. Namely, Plaintiff would be obligated to pay 20% of the Johnson Order cost and pay for air freight shipping.[2] However, this holding did not resolve the TRO matter.

On January 27, 2026, the parties returned to the Court with the following four issues: (1) which party bears the burden of tariffs; (2) which party bears the burden of arranging shipping of the wood; (3) whether Plaintiff is obligated to pay the full Johnson Order price; and (4) which party shall arrange the pickup of the Johnson Order wood from Defendant's warehouse. On the same day, the Court issued an order permitting Defendant to file a response to Plaintiff's Motion for Entry of a Preliminary Injunction on or before February 16, 2026. (Doc. 27.) In the order, the Court did not permit Plaintiff to file a reply to Defendant's response. (*Id.*)

On January 28, 2026, the Court issued an order on Plaintiff's Motion for a TRO. *See* (doc. 35.) In the Order, the Court granted the motion in part, requiring Plaintiff to pay 20% of the Johnson Order price, shipping, and tariff expenses, and requiring Defendant to make the Johnson Order available for collection at its warehouse in Spain.[3] (*Id.* at 9.)

On January 29, 2026, the Court set aside the Clerk of Court's Entry of Default. (Doc. 37.)

On February 16, 2026, Defendant filed its response to Plaintiff's Motion for Entry

---

[2] Plaintiff averred that expedited air freight could cost as much as $40,000.00 to $60,000.00. (Doc. 28.)
[3] To date, Plaintiff has not paid for the Johnson Order or taken any actions to obtain the Johnson Order following this Court's entry of a temporary restraining order. See (doc. 38 at 2.)

of a Preliminary Injunction. (Doc. 38.) On March 5, 2025, the Court heard oral arguments from the parties on the instant Motion. (Doc. 44.)

Seeing as this matter is fully briefed, and finding no cause for delay, the Court will address Plaintiffs' Motion.

### III.     FACTUAL BACKGROUND.

At its core, this matter involves an installment contract for Spanish hardwood planks. In November 2023, the parties commenced a business relationship wherein Defendant—a Spanish corporation that is registered to do business in Arizona, *see* (doc. 1 at 2)—would be Plaintiff's exclusive producer of Spanish hardwood. (Doc. 7-1 at 3.) Plaintiff, in turn, would then sell the hardwood to contractors and builders. *See* (docs. 28, 31.)

The basis of the parties' *quid pro quo*—*i.e.*, bargained-for exchange—was clear: money for wood planks. However, over time, Plaintiff fell behind on payments, resulting in Defendant's unilateral withholding of shipments "until the parties agreed on how to remedy the past due amounts." (Doc. 7-2 at 3.)

Eventually, the parties reached an agreement on August 7, 2025 (the "Agreement"). Therein, Plaintiff acknowledged a commercial debt to Defendant in the amount of $1,208,938.30, "relating to previously delivered hardwood flooring and materials currently ordered and awaiting payment before shipping." (Doc. 7-4 at 3.) To date, Defendant has shipped roughly $1,143,438.58 in wood planks to Plaintiff. (Doc. 26 at 18–20, 24.) There are three purchase orders that have not been shipped that equals the $1,208,938.30: the Wagon Plank ($4,817.96), Marigold ($5,815.27), and Johnson ($54,866.49) purchase orders.[4] (*Id.*)

As noted above, 1.2 million would be paid in eight installments. (Doc. 26 at 12); (doc. 7-2 at 4.) The following payment schedule was set in the Agreement:

1. December 15, 2025: $100,000;

2. March 15, 2026: $110,000;

---

[4]     Defendant appears to have omitted the Wagon Plank and Marigold purchase orders during oral arguments.

3.  June 15, 2026: $120,000;

4.  September 15, 2026: $250,000;

5.  December 15, 2026: $130,000;

6.  March 15, 2027: $140,000;

7.  June 15, 2027: $150,000; and

8.  September 15, 2027: $208,938.30.

(Doc. 7-4 at 6.) In sum, the $1,208,938.30 total appears to account for all purchase orders *pending and accepted*[5] by Defendant between April 19, 2024, and June 11, 2025. (Doc. 26 at 18–20) (emphasis added).

The Agreement further required that, for orders accepted on or after August 7, 2025, Plaintiff would be required to place a 50% downpayment of the order, "including shipping . . . and will then pay the balance prior to [Defendant] shipping the applicable order." (Doc. 26 at 14.) The parties' Agreement is governed by the laws of the State of Arizona. (*Id.*)

While it would be incorrect to state that the aforementioned provisions were the only ones contained in the Agreement, it would not be wholly incorrect either. The Agreement, contained on a little over three pages and an additional one-page exhibit, is— at the very least—ambiguous.[6] *See* (*id.* at 12–15.)

At issue in Plaintiff's instant Motion is roughly $306,000.00 in purchase orders requested by Plaintiff before August 7, 2025. (Doc. 7-1 at 5.) This $306,000 in purchase orders is not included in the $1.208 million that comprises the current commercial debt owed by Plaintiff to Defendant.[7] Instead, it is quite clear that the $306,000 in purchase orders are not included in the $1.208 million in purchase orders already accepted, for it would require Defendant to ship $1.5 million in wood planks to only receive $1.208 million

---

[5]    The parties have used 'queued,' 'confirmed,' and 'placed in addition to 'accepted.' The Court shall treat them interchangeably.

[6]    It has been asserted during oral arguments that the parties relied on generative AI to craft the Agreement. *See* (doc. 31.) While it is unclear whether the parties did in fact use generative AI in crafting the Agreement, the Court does note that the Agreement contains tell-tale signs of AI usage, such as typographical errors. *See, e.g.*, (doc. 26 at 12.)

[7]    The $1.208 million appears to account for the orders already shipped by Defendant and the Wagon Plank, Marigold, and Johnson purchase orders.

in compensation. While discussed in greater detail below,[8] it is quite apparent that $306,000 in purchase orders requires a 50% downpayment per the terms of the parties' Agreement.

As a final note, the parties do not dispute that Plaintiff has failed to pay a single dollar for the $1.208 million in wood planks. *See* (doc. 38 at 3); *see also* (doc. 44.) This means that the December 15, 2025, installment is nearly three months late, and it is unclear whether Plaintiff will pay the March 15, 2026, installment. *See* (doc. 44.)

**IV.    THE PARTIES' ARGUMENTS.**

The parties' arguments are summarized below.

**A. Plaintiff's Arguments.**

Plaintiff contends that injunctive relief is warranted here. In its "Memorandum of Law in Support of Entry of a Preliminary Injunction," Plaintiff asserts that injunctive relief is warranted because: (1) it is likely to succeed on the merits of its breach of contract, breach of the covenant of good faith, and tortious interference with a contract claims; (2) it is likely to suffer irreparable harm if injunctive relief is not granted; (3) the balance of hardships favors it as opposed to Defendant; and (4) injunctive relief is in the public interest here. (Doc. 7-1 at 8–18.)

In oral arguments, Plaintiff clarified its position. First, Plaintiff agreed that it had not paid the December 15, 2025, installment payment. (Doc. 44.) However, Plaintiff averred that, because Defendant had not shipped all of the pre-August 7, 2025, purchase orders, it was entitled to withhold payment until the wood was shipped. (*Id.*) Next, Plaintiff asserted that there were 14 pre-August 7th orders not shipped by Plaintiff, and another 6 contracts orders were in dispute. (*Id.*) Further, Plaintiff stated that it would be willing to make the December 15, 2025, $100,000 payment if Defendant were willing to ship the outstanding purchase orders encompassed under the pre-August 7 banner.[9] (*Id.*)

---

[8]    *See infra* section VI.B.i.a.
[9]    Plaintiff avers that there are 14 purchase orders not shipped that amount to pre-August 7th purchase orders. *See* (doc. 44.) It is unclear whether the 14 disputed purchase orders include the Wagon Plank, Merigold, and Johnson purchase orders. It is also unclear whether the 14 purchase orders equate the $306,000 the parties are in dispute over.

**B. Defendant's Arguments**.

Defendant opposes Plaintiff's Motion based on three main points. First, Defendant argued that Plaintiff is, in effect, seeking to compel Defendant to ship $306,000 of wood planks for free. (Doc. 38 at 2.) In essence, Defendant contends that there is only one pre-August 7 purchase order that has not been shipped—the Johnson Order. (Doc. 44.) Because of this, Defendant argued that the additional purchase orders Plaintiff is seeking through injunctive relief would be provided without payment. (Doc. 38 at 5.) Second, Defendant argued that because the Agreement was for $1.2 million, not $1.5 million, the $306,000 in purchase orders were not pre-August 7 orders, or, at the very least, were not encompassed in the $1.2 million repayment plan. *See* (doc. 44); *see also* (doc. 38 at 4.)

Third, Defendant contends that Plaintiff does not have sufficient funds to make any of the installment payments, so it would be unlikely that it would ever be paid for the wood it shipped. (Doc. 38 at 2–5.) Defendant supports this argument with the fact that Plaintiff, to date, has not paid for nor scheduled a shipment of the Johnson Order following the Court's order on Plaintiff's Temporary Restraining Order.[10] (*Id.* at 2.)

**V. LEGAL STANDARDS**.

"The Supreme Court has emphasized that preliminary injunctions are an 'extraordinary remedy never awarded as of right.'" *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). In deciding whether injunctive relief should be granted, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987).

---

[10] The Court notes that Defendant, in both its written and oral submissions, asserts an ad hominem argument against Plaintiff related to an alleged investigation by the Scottsdale, Arizona, Police Department. The Court discourages ad hominem attacks and will not consider those submissions.

To receive a preliminary injunction, the Plaintiff "must satisfy *Winter*'s four-factor test." *Garcia*, 786 F.3d at 740. "Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). "To grant preliminary injunctive relief, a court must find that 'a certain threshold showing is made on each factor.'" *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1076 (N.D. Cal. 2016) (quoting *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011)). The most important Winter factor is the first—*i.e.*, success on the merits. *Garcia*, 786 F.3d at 740. "[W]hen . . . a plaintiff has failed to show the likelihood of success on the merits, [the Court] need not consider the remaining three *Winter* elements." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 941 (9th Cir. 2013) (citation omitted).

There are two forms of preliminary injunctions, each governed by a different analytical framework. *See Doe v. Horne*, 683 F. Supp. 3d 950, 969–70 (D. Ariz. 2023), *aff'd*, 115 F.4th 1083 (9th Cir. 2024). "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009); *Heckler v. Lopez*, 463 U.S. 1328, 1333 (1983) (noting that a "prohibitory injunction . . . merely freezes the positions of the parties until the court can hear the case on the merits"). The status quo envisioned by a prohibitory injunction is "the last, uncontested status *which preceded the pending controversy*[.]" *Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 514 (9th Cir. 1984) (citation omitted and emphasis added); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014) ("[T]he status quo refers to the legally relevant relationship between the parties before the controversy arose.") (cleaned up).

A mandatory injunction, on the other hand, "orders a responsible party to take action[.]" *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996). "Mandatory [injunctive]

relief, which goes well beyond simply maintaining the status quo Pendente lite, is *particularly disfavored*, and *should not* be issued unless the facts and law *clearly favor* the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted and emphasis added). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879 (quoting *Anderson*, 612 F.2d at 1115).

When analyzing a motion requesting prohibitory injunctive relief, "[a] 'sliding scale' approach is used . . . under which 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'" *Hualapai Indian Tribe v. Haaland*, 755 F. Supp. 3d 1165, 1185 (D. Ariz. 2024) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Additionally, for prohibitory injunctive relief, a party need-not establish a strong likelihood of success on the merits. Rather, prohibitive injunctive relief "is appropriate if 'serious questions going to the merits were raised and the balance of the hardships tips sharply' in the moving party's favor, thereby allowing preservation of the status quo when complex legal questions require further inspection or deliberation."[11] *Volga Dnepr UK Ltd. v. Boeing Co.*, 464 F. Supp. 3d 1238, 1242 (W.D. Wash. 2020) (quoting *All. for the Wild Rockies*, 632 F.3d at 1134–35); *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) ("But if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied.") (cleaned up). It should be noted that "[t]hese formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the

---

[11] The serious question standard, of course, does not apply to a request for mandatory injunctive relief. *See MG Pharm. LLC v. Cardinal Health 110 LLC*, No. CV-21-01747-PHX-SPL, 2021 WL 6845294, at *1 (D. Ariz. Oct. 15, 2021) ("Where the movant seeks a mandatory injunction, . . . injunctive relief is 'subject to a heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party.'") (quoting *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993)).

merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1396 n.1 (9th Cir. 1997) (citation omitted).

## VI.  DISCUSSION.

The Court shall proceed as follows. First, the Court will address the character of injunctive relief sought. Second, the Court shall address the *Winter* four-part test.

### A. Mandatory or Prohibitory Injunction.

Proper labeling is not only necessary within the parties' trade—for a purchaser of mahogany would be rightly upset to receive pine—it is integral in the proper application of the law. In the Court's TRO Order, it interpreted Plaintiff's requested relief as prohibitory in nature.[12] *See generally* (doc. 35.) However, considering the additional briefings and discussions during oral proceedings, the Court finds the proper characterization of requested relief is mandatory, not prohibitory.

In reaching this conclusion, the Court finds our sister district's holding in *Fabrique Innovations, Inc. v. A.P. Express, LLC* instructive. In that action, the District Court for the Central District of California analyzed a preliminary injunction motion that requested the defendant proceed with the shipment of plaintiff's products which defendant had stopped

---

[12]    While not discussed in detail in the Court's TRO Order, the Court found that the last uncontested status of the parties was the shipment of pre-August 7 purchase orders encompassed by the Agreement. Hence, the Court found that the requested relief was prohibitory in nature. This finding appeared congruent with sister district's holdings throughout the country. *See P&L Dev. LLC v. Bionpharma Inc.*, No. 1:17CV1154, 2018 WL 11154178, at *4 (M.D.N.C. Jan. 26, 2018) (holding that, by compelling the shipment of softshell drugs at issue in the contract, the court was restoring the parties' status quo, which meant the requested relief was prohibitory in nature) (citing *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, at 378 (4th Cir. 2012) ("'To be sure, it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions,' but as the Tenth Circuit has explained, '[s]uch an injunction restores, rather than disturbs, the status quo ante.'") (quoting *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir. 2004) (McConnell, J. concurring), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006))); *Sogefi USA, Inc. v. Interplex Sunbelt, Inc.*, 538 F. Supp. 3d 620, 631 (S.D.W. Va. 2021) ("Requiring [defendant] to continue what it has done for almost three years would serve only to restore the last uncontested status between the parties, not to disturb the status quo. Accordingly, the Court is satisfied that the requested preliminary injunction is prohibitory in nature.").

shipping one day before plaintiff initiated the action. *See Fabrique Innovations, Inc. v. A.P. Express, LLC*, No. CV 19-7904-MWF (GJSx), 2019 WL 13241970, at *4 (C.D. Cal. Oct. 18, 2019). The court noted that the "timing, however, does not change the fact that [p]laintiff is seeking to *change* the status quo through its Application by requiring [d]efendant to ship its product after it has decided to stop doing so." *Id.* Hence, the court found that plaintiff was seeking a mandatory injunction, requiring it to "meet the heightened standard." *Id.*

The Court finds that Plaintiff, by seeking the shipment of the Wagon Plank, Merigold, and Johnson orders, and potentially 14 additional orders not clearly encompassed in the pre-August 7th category, *see* (doc. 44), is seeking to alter the status quo of the parties. While it is reasonably likely that the Wagon Plank, Merigold, and Johnson orders were required to be shipped shortly after the parties had executed the Agreement, "the last, uncontested status which preceded the pending controversy" was Defendant's withholding those purchase orders. *See Regents of Univ. of Cal.*, 747 F.2d at 514. Requiring Defendant to ship those orders and an additional 14 others would upend the status quo of the parties.

For the foregoing reasons, the Court characterizes the requested relief as mandatory, not prohibitory. Therefore, Plaintiff must meet the heightened standard.

### B. Application of the *Winter* Four-Part Test.

"Because Plaintiff seeks a mandatory injunction, it must establish that the law and facts *clearly favor* its position, not simply that it is likely to succeed." *Fabrique Innovations, Inc.*, 2019 WL 13241970, at *4 (cleaned up) (quoting *Garcia*, 786 F.3d at 740). With this in mind, the Court shall apply the *Winter* factors to instant action.

#### 1. *Likelihood of Success on the Merits*.

Plaintiff asserts three claims[13] in its Motion for Preliminary Injunction: (1) a breach

___

[13] The Court notes that Plaintiff's Complaint asserts four claims. *See generally* (doc. 1.) This omission, however, does not defeat its Motion for Entry of a Preliminary Injunction. *See Koller v. Brown*, 224 F. Supp. 3d 871, 875 (N.D. Cal. 2016) ("To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to 'prove his case in full[.]'") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).

- 11 -

of contract claim; (2) a claim for breach of the covenant of good faith and fair dealing; and (3) a tortious interference with a contract claim. (Doc. 7-1 at 8–14.) However, before reaching these claims, the Court shall attempt to interpret the parties Agreement.

      *a. Parties' Intent.*

To understand the merits of the arguments presented by Plaintiff, the Court must first understand the parties' Agreement. In interpreting the parties' Agreement, the Court must "look to 'the plain meaning of the words in the context of the contract as a whole' to give effect to the parties' intent."[14] *Everything Tobacco LLC v. Circle K Procurement & Brands Ltd.*, No. CV-24-00361-PHX-SMM, 2024 WL 4953271, at *3 (D. Ariz. Sept. 18, 2024) (quoting *Grosvenor Holdings, L.C. v. Figueroa*, 218 P.3d 1045, 1050 (Ariz. Ct. App. 2009)). "[T]he Court must 'apply a standard of reasonableness to contract language' and construe the contract 'in its entirety and in such a way that every part is given effect.'" *AGA S'holders, LLC v. CSK Auto, Inc.*, 589 F. Supp. 2d 1175, 1181 (D. Ariz. 2008) (quoting *State ex rel. Goddard v. R.J. Reynolds Tobacco Co.*, 75 P.3d 1075, 1078 (Ariz. Ct. App. 2003)). "Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto." *Grosvenor Holdings, L.C.*, 218 P.3d at 1050 (citation omitted).

The Court finds the parties' Agreement ambiguous, especially regarding which purchase orders are encompassed in the $1.208 million dollar total. Therefore, the Court shall endeavor to interpret the parties' agreement.

In interpreting the parties' Agreement, the Court—at this early stage—finds the clearest, most equitable, and non-absurd reading to be this: (1) the purchase orders

---

[14] In the case at hand, the parties' Agreement involves the sale of goods—*i.e.*, wood planks. *See* A.R.S. § 47-2105. Therefore, it is governed by the provisions of the Uniform Commercial Code ("UCC") as codified in the Arizona Revised Statutes. *See SiteLock LLC v. GoDaddy.com LLC*, 562 F. Supp. 3d 283, 300 (D. Ariz. 2022) ("Under the UCC, goods include 'all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale.'") (quoting A.R.S. § 47-2105(A)). Because the Agreement is governed by the UCC, it "is not enforceable . . . beyond the quantity of goods shown in such writing." *T&T Enters. LLC v. Aztec Secret Health & Beauty Ltd.*, No. CV-18-08231-PCT-DWL, 2018 WL 6727266, at *4 (D. Ariz. Dec. 21, 2018) (quoting § 47-2201(A)).

encompassing the $1.208 million amount are those already shipped and the Wagon Plank, Marigold, and Johnson orders; and (2) the requested $306,000 in purchase orders require a 50% downpayment before they may be shipped.[15] To find otherwise would amount to an absurd reading of the Agreement. Specifically, the Court will not interpret the Agreement to require Defendant to provide $1.5 million in wood planks for a $1.2 million payment. Such an absurd result runs counter to the facts of this case, equity, and caselaw. *See Aztar Corp. v. U.S. Fire Ins. Co.*, 224 P.3d 960, 973–74 (Ariz. Ct. App. 2010) (noting that the court would not construe provisions of a contract in a manner that "would result in an absurd contract"). Therefore, the Court finds the only outstanding purchase orders are the Wagon Plank, Marigold, and Johnson orders.

> b. *Breach of Contract.*

As an initial matter, the Court shall apply Arizona law because the Agreement explicitly states it "shall be governed by the laws of the State of Arizona."[16] *See* (doc. 7-4 at 4); *see also Adonia Holding GmbH v. Adonia Organics LLC*, No. CV-14-01223-PHX-GMS, 2014 WL 7178389, at *3 (D. Ariz. Dec. 16, 2014) ("Here, Arizona law applies because the Agreement explicitly states that it 'shall be governed by the laws of the State of Arizona.'"). To state a successful breach of contract claim under Arizona state law, Plaintiff must establish that "(1) a contract exists between the plaintiff and defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to plaintiff." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F. Supp. 3d 1087, 1093 (D. Ariz. 2021); *Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1125 (D. Ariz. 2010).

As to the first breach of contract element, the Court—at this early stage—finds the parties' Agreement legally ambiguous. As an example, there are multiple ways to construe the following provisions: "materials currently ordered and awaiting payment before shipping." (Doc. 7-4 at 2.) Because there are ambiguities regarding the quantity of purchase orders encompassed by the Agreement, the Court cannot conclusively find—at this early

---

[15] Because it is unclear which party drafted the agreement, the Court is unable, at this time, to rely on the *contra proferentem* principle of contractual interpretation.
[16] The parties have not disputed this matter.

- 13 -

stage—whether the parties have a valid contract.

As to the second factor, the Court cannot conclusively find that Defendant committed a clear and unjustifiable breach of contract were there a valid contract. While it appears reasonable that the Wagon Plank, Merigold, and Johnson orders, as a pre-August 7th orders, should have been shipped shortly after the parties executed the Agreement, there are a potential litany of affirmative defense that Defendant can—and has—argue justify their unilateral withholding. *See, e.g.*, (doc. 20 at 8) (asserting such affirmative defenses as anticipatory repudiation). Because the first and second breach of contract factors do not favor Plaintiff at this early stage of the litigation, the Court finds that the law does not clearly favor Plaintiff on its breach of contract claim.

### c.   Breach of the Covenant of Good Faith and Fair Dealing.

Next, Plaintiff avers that Defendant has breached the covenant of good faith and fair dealings. *See* (doc. 7-1 at 11.) Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986) (en banc). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.*

Just as was the case above,[17] the Court does not find that the law clearly favors Plaintiff at this early juncture. First, the Court does not have sufficient evidence before it to affirmatively find that Defendant acted to impair the right of Plaintiff to receive the benefits of the Agreement. Second, at this juncture, it is unclear whether Plaintiff's argument for the covenant of good faith would sound in contract or in tort. In Arizona, "the remedy for breach of the implied covenant of good faith is ordinarily on the contract itself." *Id.* at 158 (citing *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985)). Only "[i]n certain circumstances [may a] breach of contract, including breach of the covenant of good faith and fair dealing, may provide the basis for a tort claim." *Wagenseller*, 710 P.2d at 1038. To have a breach of covenant of good faith claim sound in tort, there generally must be a relationship where "the law implies special duties not

---

[17]    *See supra* section VI.B.I.b.

- 14 -

imposed on other contractual relationships." *Rawlings*, 726 P.2d at 574.

Here, it does not appear, based on the factual record before the Court, that there was a special relationship between the parties. Hence, Plaintiff is unlikely to pursue a tort breach of covenant claim. Additionally, at this stage, the contract remedies for a potential breach of the covenant of good faith are unclear because the parties' Agreement does not contain any remedy provisions for a potential breach by Defendant. See *Wagenseller*, 710 P.2d at 1038 ("[T]he remedy for its breach generally is on the contract itself." (citing *Zancanaro v. Cross*, 339 P.2d 746, 750 (Ariz. 1959)).

For the foregoing reasons, the Court cannot conclude that the law clearly favors Plaintiff regarding its breach of the covenant of good faith and fair dealings claim.

                    d.   *Tortious Interference with a Contract*.

Plaintiff's final claim in the instant Motion is for tortious interference with a contract. "The elements of tortious interference with contract are (1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the defendant, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) proof that the defendant acted improperly." *AGA S'holders, LLC*, 589 F. Supp. 2d at 1189 (citing RESTATEMENT (SECOND) OF TORTS § 766 (A.L.I. 1979). Liability for tortious interference with contract may be imposed for "any intentional and *unjustified* interference resulting in harm to the plaintiff." *Infante v. Namecheap Inc.*, No. CV-25-02537-PHX-DJH, 2025 WL 2390663, at *4 (D. Ariz. Aug. 18, 2025).

Plaintiff has not sufficiently established any of the above elements. This is especially true regarding the third element. Plaintiff has not sufficiently plead that Defendant intentionally and unjustifiably interfered with any contract Plaintiff entered. Consequently, the Court does not find that the law clearly favors Plaintiff on its tortious interference with a contract claim.

          **2.  Remaining Three Winter Elements**.

Considering the fact that mandatory injunctive relief "is particularly disfavored, and

should not be issued unless the facts and law clearly favor the moving party," *Anderson*, 612 F.2d at 1114, and in light of the Ninth Circuit Court of Appeals statement that "when a plaintiff has failed to show the likelihood of success on the merits, the Court need not consider the remaining three *Winter* elements," *Ass'n des Eleveurs de Canards et d'Oies du Quebec*, 729 F.3d at 941 (cleaned up), the Court shall not analyze them in detail.

First, the irreparable harm element does favor Plaintiff. Here, Plaintiff has averred economic harm and that it is likely to suffer loss of goodwill, loss of customers, and a risk to its continued operations. Because the loss of goodwill, *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001), and threat of being driven out of business, *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022), is sufficient to establish irreparable harm, the Court finds that the irreparable harm element favors Plaintiff.

Next, regarding the balance of equities, the Court finds that it tips in favor of Defendants. Were Plaintiff only seeking the Johnson Order—which both parties agree is a pre-August 7th purchase order—the balance would slightly favor Plaintiff. However, because Plaintiff is seeking an additional $306,000 in purchase orders that do not reasonably appear to be part of the $1.2 million bargained-for-exchange, the Court finds that the balance tips in favor of Defendant. In short, Defendant should not be obligated to provide hundreds of thousands of dollars of wood planks *gratis*.

On the final element, public interest, the Court finds that the public interest is balanced between the parties. In short, the public interest does not favor the shuttering of business, but it also does not favor requiring a company to ship $306,000 of wood planks *gratis*.

In total, only the element of irreparable harm favors Plaintiff. Hence, entry of a mandatory injunction is unwarranted under the *Winter* four-factor test.

## VII. CONCLUSION.

Because Plaintiff has failed to establish that the law and facts clearly favor granting its requested injunctive relief, the Court shall accordingly deny the Motion. This is not the

end of the matter though. The Court has taken note of a potential point of agreement between the parties in the oral proceedings: if Plaintiff pays the $100,000 deposit that was due in December 2025, Defendant will ship the currently outstanding orders.[18] The parties should consider this potential 'meeting of the minds' as this action progresses.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Entry of a Preliminary Injunction (doc. 7) is **DENIED**.

Dated this 10th day of March, 2026.

Honorable John Z. Boyle
United States Magistrate Judge

---

[18]    *I.e.*, the Wagon Plank, Merigold, and Johnson purchase orders.

- 17 -